## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA



| | | |
|---|---|---|
| Marcia A. Smith, | ) | Docket No.: 2017-01-0663 |
| **Employee,** | ) | |
| v. | ) | |
| Allegis Group, Inc., | ) | State File No.: 1326-2017 |
| **Employer,** | ) | |
| And | ) | |
| Insurance Company of North America, | ) | Judge Thomas Wyatt |
| **Carrier.** | ) | |
| | ) | |

**FILED**
**Jul 02, 2018**
**11:05 AM(ET)**
**TENNESSEE COURT OF
WORKERS' COMPENSATION
CLAIMS**

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS

This matter came before the Court on June 28, 2018, on Marcia Smith's Request for an in-person Expedited Hearing seeking additional medical benefits. Allegis Group, Inc. (referred to during the hearing as "Aerotek") contended Ms. Smith is not entitled to these benefits because she failed to establish by expert medical opinion that her alleged injury arose primarily out of and in the course and scope of employment.[1]  For the reasons below, the Court agrees and holds Ms. Smith is not entitled to the requested benefits.

### History of Claim

Aerotek is a staffing agency for assembly-line positions at the Chattanooga Volkswagen plant.  Ms. Smith began to experience pain and swelling after working for Aerotek for approximately two years.  Sometime before November 2016, she reported her problems to an on-site supervisor, a Volkswagen employee.  These reports resulted in Ms. Smith receiving treatment twice at Volkswagen's in-house medical facility.  No evidence suggested that Ms. Smith's problems caused her to miss work.

---

[1] Aerotek's counsel also raised a notice defense.  However, the Court's ruling on Ms. Smith's failure to establish that her injury arose primarily out of and in the course and scope of employment makes the notice issue moot.

1

In November or December 2016, Ms. Smith again asked the Volkswagen supervisor for medical care of her hand and fingers. On January 3, 2017, she requested treatment from Aerotek's management, who provided a panel from which she selected Dr. Natasha Ballard. Ms. Smith first saw Dr. Ballard on January 18.

Dr. Ballard recorded that Ms. Smith did not report a "known injury," but "[t]hinks she might be having a reaction to her work gloves causing knots on the end of left thumb."[2] The doctor also noted that Ms. Smith reported irritation in her cuticles and knots and swelling at her fingertips. Dr. Ballard ordered x-rays that revealed "mild degenerative changes at the DIP joints left hand and significant degenerative changes at [the] MCP joint." She also diagnosed the likely formation of "Heberden's nodes on several of Ms. Smith's joints due to early arthritis" and wrote that "[a]ll possible etiologies [of her hand symptoms] are chronic in nature and therefore not work-related." Dr. Ballard released her to return to work without restrictions.

Ms. Smith's version of her conversation with Dr. Ballard differed slightly from that recorded in the doctor's notes. She testified that Dr. Ballard told her that the nodules in her fingers were caused by early rheumatoid arthritis; that she did not know what the knot on her left thumb was; and that she should watch the left-thumb knot and return if it grew larger. Ms. Smith testified that Dr. Ballard gave her lotion to moisturize her hands and instructed her to work without gloves as often as possible.

Aerotek denied Ms. Smith's claim based on Dr. Ballard's causation opinion. Ms. Smith returned to regular duty and continued to perform assembly-line work for the next several months. She experienced pain and swelling as she worked, especially when installing rubber water seals on vehicle doors. Ms. Smith reported this pain to the Volkswagen supervisor and asked him to assign her to other, less repetitive, available jobs. She considered it harassment when she continued to receive assignments to the door-seal job.

By July, the knot on Ms. Smith's thumb grew to the size of a "gumball." As instructed, she asked to see Dr. Ballard again, but Aerotek withheld benefits based on its previous denial. Ms. Smith continued to work while in pain, but she quit on October 31 because she could no longer perform her continued assignments to the door-seal job without severe pain. Ms. Smith moved to Huntsville, Alabama and worked a temporary assignment assembling electric circuitry boards from January 2018 until two weeks ago, when the assignment ended.

On May 15, 2018, Ms. Smith saw orthopedist Dr. Philip Maddox for "left thumb pain." Dr. Maddox diagnosed a ganglion cyst on her left thumb but released her to

---

[2] Ms. Smith testified that the job she worked during her first year with Aerotek did not require her to wear gloves often, but the job she worked at the time the knots formed required almost constant use of gloves.

regular duty. Concerning causation, Dr. Maddox wrote, "I do not believe that her work caused this, but it may have aggravated it."

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

The Workers' Compensation Law defines a compensable injury or cumulative trauma condition as one "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14), (14)(A) (2017). The statute provides that pre-existing conditions are compensable only if it is shown to a reasonable degree of medical certainty that "the aggravation arose primarily out of and in the course and scope of employment." *Id.* at § 50-6-102(14)(A). To establish a claim for benefits, Tennessee Code Annotated sections 50-6-102(14)(B) and (C) require proof by expert medical opinion that "the employment contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes."

The burden is on Ms. Smith to prove the essential elements of her claim. *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Aug. 18, 2015). However, since this is an expedited hearing, she can meet this burden by providing sufficient evidence from which the Court can determine the likelihood of her prevailing at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

### *Analysis*

The central determination here is whether Ms. Smith presented sufficient expert medical opinion to establish her likelihood of prevailing at trial that her injury arose primarily out of and in the course and scope of employment. In considering this issue, the Court first addresses the opinion of Dr. Ballard, which receives a rebuttable presumption of correctness because Ms. Smith selected her from a panel as the authorized treating physician. Tenn. Code Ann. § 50-6-102(14)(E).

Dr. Ballard based her perfunctory causation opinion on the conclusion that all possible diagnoses of Ms. Smith's condition "are chronic in nature and therefore not work-related." The Court gives little weight to this opinion because, as written, it appears that Dr. Ballard assumed that chronic conditions cannot be work-related. That assumption is incorrect under Workers' Compensation Law. *See* Tenn. Code Ann. § 50-6-102(14)(A) (an aggravation of a pre-existing condition is compensable if the underlying aggravation is established to arise primarily out of and in the course and scope of employment).

3

The Court next addresses whether Ms. Smith's testimony and Dr. Maddox's causation opinion sufficiently rebutted Dr. Ballard's opinion to satisfy her burden of proof. Initially, the Court holds that Ms. Smith testified credibly that her hand and thumb problems developed as she worked repetitively while wearing gloves that irritated her fingers and thumbs.

However, Tennessee law requires Ms. Smith to prove more than factual causation to establish her claim. She must also submit expert medical opinion that she will likely prevail at trial in establishing the work-relatedness of her condition under statutory definitions. Ms. Smith attempted to meet this burden by submitting Dr. Maddox's opinion that her work at Aerotek may have aggravated the ganglion cyst on her left thumb. In view of statutory definitions, the Court holds that Dr. Maddox's opinion fails to satisfy Ms. Smith's burden of proof.

Dr. Maddox's discussion of the work-relatedness of Ms. Smith's ganglion cyst is insufficient because he couched his opinion more within the realm of possibility than likelihood. Tennessee Code Annotated section 50-6-102(14)(D) provides that expert medical testimony of the "possibility" of the work-relatedness of a condition is insufficient to establish benefits.

Further, Dr. Maddox's discussion falls short because he did not track the statutory language—whether Ms. Smith's work "contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes"—in stating his opinion. *See* Tenn. Code Ann. § 50-6-102(14)(C). In *Panzarella v. Amazon.com, Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *16-17 (May 15, 2017), the Appeals Board affirmed a denial of benefits because the medical proof "failed to establish that the employment contributed more than fifty percent in causing the injury, considering all causes, *as the statute plainly requires.*" (Emphasis added.) *See also Owens v. Sitters, Etc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 26, at *22-23 (May 29, 2018.)

Because of these insufficiencies in Dr. Maddox's opinion, the Court holds Ms. Smith failed to establish that she is likely to prevail at a hearing on the merits in proving that the conditions in her left fingers and thumb arose primarily out of and in the course and scope of employment. Thus, at this time, the Court denies her claim for additional medical benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. At this time, Ms. Smith's claim for interlocutory relief is denied.

2. The Court schedules a telephonic Status Conference at **10:30 a.m. Eastern Time on October 31, 2018,** to discuss whether to schedule the Compensation Hearing and attendant deadlines in this claim. The parties shall call 855-747-1721 (toll-free) or 615-741-3061 to participate in the Status Conference. A party's failure to call in at the scheduled time may result in the Court making decisions, including scheduling decisions, without the absent party's participation.

**ENTERED July 2, 2018.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

## APPENDIX

<u>Exhibits</u>: The Court admitted the following exhibits into evidence during the Expedited Hearing:

1. First Report of Injury;
2. Employee Choice of Physician form;
3. Notice of Denial of Claim for Compensation;
4. Affidavit of Marcia A. Smith;
5. Medical records of Doctors Express/Dr. Natasha Ballard;
6. Medical records of Dr. Philip Maddox; and
7. Photographs of Ms. Smith's thumb taken in July 2017.

<u>Technical record</u>: The Court considered the following filings in deciding this claim:

1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Employer Position Statement;
4. Employee Position Statement;
5. Request for Expedited Hearing;
6. Notice of Expedited Hearing;
7. Employer Witness and Exhibit Statement; and
8. Employer Expedited Hearing Brief.

5

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods on July 2, 2018.

| Name | Certified Mail | Via Email | Service sent to: |
|---|---|---|---|
| Marcia Smith, Self-Represented Employee | X | X | Smithmarcia8845@yahoo.com 302 Max Luther Drive Huntsville, AL 35811 |
| Kaitlin Kazmier David Deming Employer Attorneys | | X | kkazmier@manierherod.com ddeming@manierherod.com |

_Penny Shrum_     w/permission

**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov

6



## Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____      2. Address: _____

3. Telephone Number: _____      4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____   Relationship: _____

_____   Relationship: _____

_____   Relationship: _____

_____   Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

Groceries        $ _____ per month    Telephone       $ _____ per month

Electricity      $ _____ per month    School Supplies $ _____ per month

Water            $ _____ per month    Clothing        $ _____ per month

Gas              $ _____ per month    Child Care      $ _____ per month

Transportation   $ _____ per month    Child Support   $ _____ per month

Car              $ _____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile                 $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                      $ _____    (FMV) _____

Other                      $ _____    Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                          RDA 11082